UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RONALD O. RILEY,

                    Plaintiff,              11-CV-6512T

          v.                                **DECISION
                                            and ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.

_____

## <u>INTRODUCTION</u>

Plaintiff Ronald O. Riley ("Plaintiff") brings this action pursuant to the Social Security Act § 216(I) and § 223, seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits. Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") MaryJoan McNamara denying his application for benefits was not supported by substantial evidence contained in the record and was contrary to applicable legal standards.

Plaintiff moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c)("Rule 12(c)") and 42 U.S.C. 405(g) seeking to reverse the Commissioner's decision or, in the alternative, remand to the Commissioner for reconsideration of the evidence. The Commissioner cross-moves for judgment on the pleadings pursuant to 42 U.S.C. 405(g) on grounds that the decision of the ALJ was supported by substantial evidence in the record and was in accordance with the applicable legal standards. This Court finds

that the decision of the Commissioner was supported by substantial evidence in the record and was in accordance with the applicable legal standards. Therefore, for the reasons set forth below, the Commissioner's motion for judgment on the pleadings is hereby granted.

**BACKGROUND**

Plaintiff, an industrial laborer, age 46, filed an application on August 24, 2009, for disability and Disability Insurance Benefits under title II, § 216(I) and § 223 of the Social Security Act ("the Act") claiming a disability since September 24, 2007, due to diabetes mellitus, a stomach ulcer, hypertension, ketoacidosis, an injury to his right thumb, an injury to his right leg, depression, and anxiety.[1] Plaintiff's application was initially denied by the Social Security Administration ("the administration") on October 19, 2009. Plaintiff then filed a timely request for a hearing on December 21, 2009.

Plaintiff appeared for a hearing, with counsel, before ALJ MaryJoan McNamara on February 10, 2011. Estelle L. Davis, a vocational expert, also testified at the hearing. In a decision dated April 21, 2011, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner when the

---

[1]Plaintiff later claimed foot pain, leg swelling and edema, chronic neck and shoulder pain, and gastroesophageal reflux disease.

Social Security Appeals Council denied Plaintiff's request for review on August 26, 2011. On October 14, 2011, Plaintiff filed this action.

## DISCUSSION

## I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. This section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether the Commissioner's findings were supported by substantial evidence, and whether the Commissioner employed the proper legal standards in evaluating the plaintiff's claim. See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo).

The Commissioner asserts that his decision was reasonable and is supported by substantial evidence in the record and is in accordance with the applicable legal standards. Accordingly, Commissioner moves for judgment on the pleadings pursuant to Rule 12(c). Under Rule 12(c), judgment on the pleadings may be

granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639 (2d Cir. 1988). If, after a review of the record, the Court is convinced that Plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007). After reviewing the entire record, this Court finds that the Commissioner's decision is supported by substantial evidence in the record, and is in accordance with the applicable legal standards. Therefore, the Commissioner's motion for judgment on the pleadings is granted, and the Plaintiff's motion is denied.

II. **<u>The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.</u>**

In her decision, the ALJ adhered to the five step sequential analysis for evaluating Social Security Disability benefits claims, which requires the ALJ to consider:

> (1) whether the claimant is engaged in any substantial gainful work activity;
>
> (2) if not, whether the claimant has a severe impairment that significantly limits her ability to work;
>
> (3) whether the claimant's impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4; if so, claimant is considered disabled;
>
> (4) if not, the ALJ determines whether the impairment prevents the claimant from performing past relevant work; if the claimant has the residual functional capacity ("RFC") to do her past work, she is not disabled;

> (5) even if the claimant's impairment(s) prevent her from
> doing past relevant work, if other work exists in
> significant numbers in the national economy that
> accommodates her residual functional capacity and
> vocational factors, she is not disabled.

See 20 C.F.R. §§404.1520 (a) (i)-(iv) and 416.920(a)(4)(i)-(iv).

At Step One of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (Transcript of Administrative Proceedings at page 74) (hereinafter "Tr.").

At Step Two, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus and chronic neck and shoulder pain. (Tr. at 74). The Plaintiff also had the following non-severe impairments: hypertension, gastroesophageal reflux disease, lower extremity edema, depressive disorder, and drug and alcohol dependence. (Tr. at 75).

At Step Three, the ALJ concluded that although severe, the Plaintiff's impairments due to diabetes mellitus and chronic neck and shoulder pain did not meet or equal, alone or in combination, the criteria listed in Appendix 1, Subpart P of Regulations No. 4. (Tr. at 77).

At Step Four, the ALJ found that Plaintiff's past work as a forklift operator, packer, punch press operator, farm laborer, and carpenter supervisor all exceeded the exertional requirements of his residual capacity, and therefore, Plaintiff could not perform his past relevant work. (Tr. at 86).

At Step Five, the ALJ found that, considering Plaintiff's age, education, work experience, and residual functional capacity, a significant number of jobs existed in the national economy that Plaintiff could perform, such as cashier and mail clerk. (Tr. at 87). The ALJ concluded that Plaintiff, despite his impairments, retained the residual functional capacity to perform a significant range of light work, as long as Plaintiff retained a sit/stand option. Specifically, the ALJ found that Plaintiff would need to keep a low stool nearby for less than 1/3 of the day. Additionally, Plaintiff had no limitations in his dominant arm, but could only occasionally reach in all directions with his non-dominant arm. Plaintiff could frequently climb ramps or stairs, but could never climb ladders, ropes or scaffolds. Plaintiff could frequently bend, stoop, kneel, crouch, or crawl. Plaintiff had no visual or communicative limitations. He could understand and carry out simple instructions, and he was capable of sustaining attention and concentration as necessary. Plaintiff was capable of interacting with others. And, he was able to interact appropriately in the workplace. (Tr. at 77,78). Accordingly, the ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. at 87).

Based on a review of the entire record, I find that the ALJ properly concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

### A. **The ALJ's Residual Functional Capacity finding is supported by substantial evidence in the record.**

Plaintiff claims that the ALJ's Residual Functional Capacity ("RFC") finding is not supported by substantial evidence. After considering the medical evidence in the record and Plaintiff's testimony, the ALJ found that Plaintiff retained the RFC for light work as defined by 20 C.F.R. 404.1567(b) and 20 C.F.R. 416.967(b), except that "the claimant would need a sit/stand option." (Tr. at 77). In arriving at this conclusion, the ALJ reviewed Plaintiff's testimony and many treatment records from Veterans Affairs. The ALJ then relied on consultative physical evaluations from Dr. Karl Eurenius and Dr. Harbinder Toor; consultative psychiatric evaluations from Dr. Lisa Blackwell, Dr. Kavitha Finnity, and Dr. Christine Ransom; and a medical source statement from treating physician Dr. Rebecca Drayer. All of the aforementioned addressed the Plaintiff's symptoms and functional limitations.

Dr. Eurenius, who examined Plaintiff, opined in October 2009 that Plaintiff was "not significantly limited in any routine activities due to his medical problems." (Tr. at 399). The ALJ afforded great weight to his opinion.

Dr. Toor, to whom the ALJ also afforded great weight, opined in April 2011 that Plaintiff had "mild to moderate" limitations in standing, walking and sitting for a long time. (Tr. at 522). Dr. Toor also found that Plaintiff had "moderate" limitations in

reaching with the left shoulder, twisting, bending, and extending the cervical spine. (Tr. at 522).

Dr. Blackwell, to whom the ALJ afforded some weight, opined--based upon her review of the record in October 2009--that Plaintiff had only a mild limitation in activities of daily living and maintaining social functioning. (Tr. at 414). But, Dr. Blackwell found that Plaintiff would have moderate difficulties in maintaining concentration, persistence, or pace. (Tr. at 414). No episodes of decompensation were noted, and Dr. Blackwell concluded that Plaintiff could perform simple tasks. (Tr. at 414, 420).

Dr. Finnity, whom the ALJ afforded some weight, opined in October 2009 that Plaintiff was able to follow, understand, and perform simple tasks. (Tr. at 402). Additionally, Dr. Finnity concluded that Plaintiff had difficulty with attention, concentration, maintaining a regular schedule, relating to others, and dealing with stress. (Tr. at 402). But, Dr. Finnity opined that Plaintiff was able to learn new tasks, perform complex tasks, and make decisions. (Tr. at 402).

Dr. Ransom, whom the ALJ afforded great weight, opined in April 2011 that Plaintiff could follow, understand, and perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, and learn simple new tasks. (Tr. at 533). Additionally, Dr. Ransom concluded that Plaintiff would have

only mild difficulty performing complex tasks, relating adequately with others, and dealing appropriately with stress. (Tr. at 533).

Dr. Drayer, Plaintiff's treating physician, to whom the ALJ afforded less than controlling weight to her opinions, diagnosed Plaintiff in November 2010 with diabetes and shoulder arthralgia(joint pain); and concluded that the Plaintiff's prognosis was fair. (Tr. at 422). Dr. Drayer's records indicated that, based upon the examinations of the Plaintiff, she concluded that he could walk one or two blocks, sit for more than two hours at one time, and stand for 45 minutes at a time. (Tr. at 422). Dr. Drayer also found that Plaintiff could sit for at least six hours in an eight hour working day and could stand/walk for about 2 hours in an eight hour working day. (Tr. at 422). Dr. Drayer qualified her opinion and provided that Plaintiff would need a job that permits shifting positions at will from sitting, standing, or walking. (Tr. at 422). Dr. Drayer concluded that Plaintiff's legs should be elevated with prolonged periods of sitting; specifically, Plaintiff would need to keep his leg(s) elevated 10 to 20 degrees for up to 60% of the day. (Tr. at 423).

Dr. Drayer opined that Plaintiff could frequently lift less than 10 pounds, occasionally lift 10 pounds, and rarely lift 20 pounds, and could occasionally reach with his arms, including reaching overhead. Dr Drayer concluded that Plaintiff could frequently twist, stoop(bend), crouch/squat, look down (sustained

flexion of neck), turn his head to the right or left, look up, or hold his head in a static position but that he could rarely climb ladders and occasionally climb stairs. (Tr. at 423, 424).

Dr. Drayer also found that Plaintiff was mentally capable of low stress jobs and that he had no serious limitations regarding mental abilities and aptitudes which were required to perform unskilled work. (Tr. at 422, 424-25). The record reveals that an MRI performed upon the Plaintiff showed a large extruded disk at C5-6 causing narrowing of the left neural foramen with deformity of the thecal sac. The same report noted that there was no evidence of cord compression. (Tr. at 83).

In a later episode, Dr. Drayer observed that the claimant had signs of mild muscle spasms but with no sign of acute distress. The ALJ noted that Dr. Drayer felt that the claimant and his wife "were seeking short-term disability and suggested the possibility of some secondary gain in the claimant's reporting of the persistent shoulder and neck pain." (Tr. at 83).

The ALJ emphasized that, in addition to taking strong pain medications such as Furosemide, Hydrocodone, along with Insulin, Lidocaine, Omeprazole, Ranitidine, and Vardenafil, the Plaintiff also admitted to smoking a pack of cigarettes a day and "he also uses marijuana regularly." (Tr. at 83).

Dr. Christine Ransom, PhD., in a post-hearing psychiatric examination on April 1, 2011, stated that, not withstanding

Plaintiff's complaint of fluctuating appetite, fatigue, difficulty concentrating, and social withdrawal, he was still capable of performing self-care tasks and relied upon his wife to handle most of the household tasks. (Tr. at 84). Again, the Plaintiff admitted to using marijuana several times per week.

In response to Dr. Drayer's conclusion that the Plaintiff's legs should be elevated with prolonged period of sitting - specifically that the Plaintiff would need to keep his legs elevated 10 to 20 degrees for up to 60% of the day, the ALJ felt that Dr. Drayer's treatment notes suggested that the claimant's symptoms and impairments were mild at best. (Tr. at 85). Also, a month later, Dr. Drayer stated she believed Plaintiff was exaggerating his symptoms to receive benefits. (Tr. at 432). This inconsistency with the record is a valid basis to afford a treating source's opinion less than controlling weight. See 416.927, SSR 96-2p.

Plaintiff's admission to various treating and examining medical sources that he regularly used marijuana, led to the ALJ's conclusion that, even though it is likely the claimant might miss work because of his physical and possibly mental difficulties, it appeared to the ALJ that ". . . it would be as likely to be because of the claimant's dependence on marijuana as it would be because of any physical impairment."

Thus, reviewing the record as a whole, this Court finds that the ALJ's RFC was supported by substantial evidence in the record.

**B. <u>The ALJ gave proper weight to the medical opinions in the record.</u>**

Plaintiff argues that the ALJ did not assign appropriate weight to the opinion of Plaintiff's treating physician, Dr. Drayer.

In the RFC determination, the ALJ gave Dr. Drayer's opinion "some weight." (Tr. at 85). Ultimately, Plaintiff argues that the ALJ's RFC, insofar as it is contrary to Dr. Drayer's opinion that Plaintiff would need a stool to elevate his legs for up to 60% of the day is inconsistent with the treating physician rule, and therefore is legal error. (Tr. at 423). The Court is not persuaded by this argument.

The treating physician rule provides that

> "a treating physician's opinion on the subject of medical disability, i.e. diagnosis and nature and degree of impairment, is (i) binding on the fact-finder unless contradicted by substantial evidence, and (ii) entitled to some extra weight . . . although resolution of genuine conflicts between the opinion of the treating physician, with its extra weight, and any substantial evidence to the contrary, remains the responsibility of the fact-finder."

<u>Schisler v. Heckler</u>, 787 F.2d 76, 81 (2d Cir. 1986). The rule, generally, gives deference to the physician who has provided the

primary treatment for the patient. 20 C.F.R. § 404.1527(d)(2); Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003).

When determining whether a treating physician's opinion should be given controlling weight, the ALJ must evaluate: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).

Therefore, the opinion of a treating physician may be given less than controlling weight when it is not consistent with other substantial evidence in the medical record. Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).

Plaintiff also argues that the ALJ improperly gave great weight to the consultative opinions of Dr. Toor and Dr. Ransom. "It is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence, and the report of a consultative physician may constitute such evidence." Monguer v. Heckler, 722 F.2d 1033, 1039 (2d Cir.1983) (citations omitted); Provost-Harvey v. Comm'r of Soc. Sec., 2008 WL 697366, at *6 (N.D.N.Y. Mar. 13, 2008) (McAvoy, S.J.) ("The evaluations of non-examining State agency medical and psychological consultants may constitute substantial evidence.")

(citations omitted). "It is the function of the ALJ to weigh conflicting evidence and resolve any discrepancies." <u>Martin v. Commissioner of Social Sec.</u>, 2008 WL 4793717, at *10 n. 9 (N.D.N.Y. Oct. 30, 2008) (Sharpe, J. and Peebles, M.J.) (citation omitted).

With respect to Dr. Drayer's opinion that Plaintiff had a limitation of needing a stool for elevating his legs for 60% of the working day, the Court finds that this opinion is lacking for substantial evidence in the record. In fact, this opinion is contrary to not only the entire medical record, but also to Dr. Drayer's own treatment notes that the Plaintiff's impairments were mild at best. (Tr. at 85). This Court also finds that the respective opinions of Dr. Toor and Dr. Ransom are supported by substantial evidence in the medical record.

Insofar as the medical evidence in the record was inconsistent with Dr. Drayer's opinion, the ALJ was entitled to give that opinion less than controlling weight. Additionally, the ALJ did not err in giving great weight to the opinions of the consultative physicians, Dr. Toor and Dr. Ransom.

**C.** **The ALJ properly evaluated Plaintiff's credibility.**

Plaintiff argues that the ALJ erred in her evaluation of Plaintiff's credibility. Specifically, Plaintiff argues that the ALJ erred in finding a claimant's statements not fully credible because those statements are inconsistent with the ALJ's own RFC finding. (Plaintiff's Brief, at 19).

The Social Security regulations provide that "in determining the credibility of the individual statements, the adjudicator must consider the entire record."  SSR 96-7p.  The ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not credible to the extent that they [were] inconsistent with the above residual functional capacity assessment."  (Tr. at 78).  Also, the credibility of witnesses is primarily determined by the ALJ and not the courts.  See Carroll v. Secretary of Health and Human Services, 705 F.2d 638, 642 (2d Cir. 1982).  Thus, contrary to Plaintiff's allegations, the ALJ's statement that Plaintiff's symptoms were not credible to the extent that they were inconsistent with the RFC finding is not erroneous.  The RFC was based on all the evidence in the record, including Plaintiff's subjective complaints and the opinions of the examining and consulting physicians which the ALJ considered.

The record reveals that the ALJ's decision was properly based upon the objective medical evidence and the factors set forth in 20 CFR § 404.1529(c), including the history of his treatment, the medications taken and their effectiveness, inconsistent statements made by the Plaintiff to the treating and examining sources, and his capability to perform daily activities.  (Tr. at 78, 86).  The ALJ took note of Plaintiff's failure to be compliant with treatment particularly with regard to his diabetes, and his continued smoking

of cigarettes and marijuana despite being told by his physician to stop. (Tr. at 78, 86). The ALJ also properly noted that Dr. Drayer, the Plaintiff's treating physician, stated that Plaintiff might be exaggerating symptoms to receive disability benefits. (Tr. at 85, 434). Plaintiff also admitted that leg swelling was no longer an issue and that he was able to take care of his self-care needs. (Tr. at 34, 83, 85). The ALJ also considered that the Plaintiff admitted in January 2010 that he was feeling much better despite pain in his left shoulder. (Tr. at 83, 494).

The Court is compelled to uphold the Commissioner's decision in discounting claimant's complaint of pain if the finding is supported by substantial evidence, as it is here in this case. See Aponte v. Secretary of Department of Health and Human Services, 728 F.2d 588, 591 (2d Cir. 1984). Based on the above, the Court finds that the totality of the evidence in the record supports the ALJ's assessment of Plaintiff's credibility and his RFC finding.

**D.** **The ALJ posed a complete hypothetical to the vocational expert in determining the Plaintiff's RFC.**

Plaintiff argues that the ALJ provided the vocational expert with an incomplete hypothetical that omitted some of Plaintiff's limitations which yielded job results that were inconsistent with his actual residual functional capacity.

In questioning a vocational expert, a hypothetical must precisely and comprehensively set out every physical and mental

impairment of the Plaintiff that the ALJ accepts as true and significant. <u>Varley v. Sec'y of Health & Human Services</u>, 820 F.2d 777, 779 (6th Cir. 1987). Additionally, "an ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as the facts of the hypothetical are based on substantial evidence." See <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1553-54 (2d Cir.1983).

Here, the vocational expert suggested, in her answers to the second hypothetical, that an individual who had the same limitations as Plaintiff, but who would need to elevate his legs for 60% of the day would be unemployable. (Tr. at 60). This hypothetical was properly excluded from the ALJ's vocational decision-making process because the ALJ found that the restrictions it was based upon--elevating Plaintiff's legs for a substantial part of the day--were not supported by substantial evidence in the record. See <u>Priel v. Astrue</u> No. 10-566-cv, 453 Fed.Appx.84, 87(2d Cir. 2011)(where the Court decided that the ALJ properly declined to include in his hypothetical question symptoms and limitations suggested by the treating physician that both conflicted with other substantial evidence in the record and were discounted in the RFC assessment).

In hypothetical three, the ALJ asked the vocational expert if a hypothetical individual of the claimant's age, education, and work experience who can lift and carry at the light exertion level; has no limitations in his dominant arm; can occasionally reach in

all directions with the non-dominant arm; should not climb ladders, ropes, and scaffolds; can frequently climb ramps and stairs; can frequently bend, stoop, kneel, crouch, and crawl; has no visual nor communicative limitations; is capable of understanding and carrying out simple instructions; is capable of sustaining attention and concentration as necessary; is capable of interacting with others; is capable of maintaining an appropriate schedule; and is capable of interacting appropriately at the workplace could find work within the national economy, as long as that person had a sit/stand option and as long as that person could keep a low stool nearby for part of the day. (T. at 60). The vocational expert indicated that even with those limitations, a person could still perform work in the national economy as a mail clerk or cashier. (Tr. at 61-62).

This Court finds that the ALJ was correct in not relying on the second hypothetical posed to the vocational expert. Specifically, I find that the third hypothetical posed to the vocational expert included all of Plaintiff's physical and mental impairments which were supported by substantial evidence in the record. (Tr. at 60). Accordingly, the Court finds that the ALJ properly relied on the opinion of the vocational expert in response to the hypothetical presented to her. See Dumas, 712 F.2d at 1554.

**E.** **The Appeals Council did not err by failing to remand the case.**

The Appeals Council did not err by failing to remand the case in light of receiving "new and material" evidence post-hearing of

a neurological consultation and opinion letter submitted by neurosurgeon, Dr. Jennifer Jennings dated April 29, 2011.

"If new and material evidence is submitted to the Appeals Council, the Council will consider it 'only if it relates to the period on or before the date of the administrative law judge hearing decision.'" <u>Soto v. Astrue</u>, 09 CIV. 9862 HB, 2011 WL 1097392, *3 (S.D.N.Y. Mar. 23, 2011); 20 C.F.R. § 416.1470(b). <u>See also</u> <u>Richardson v. Apfel</u>, 44 F. Supp. 2d 556, 562 (S.D.N.Y. 1999). To obtain a review of a submission of additional evidence, the claimant must establish that "the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." <u>Sergenton v. Barnhart</u>, 470 F.Supp.2d 194, 204 (E.D.N.Y.2007) (citing <u>Lisa v. Sec'y of Health & Human Servs.</u>, 940 F.2d 40, 43 (2d Cir.1991)).

In addition, there "must be a 'reasonable possibility that the new evidence would have changed the outcome of" the ALJ's decision "had it been before him." Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987).

Here, the Appeals Council correctly found that even with the new evidence, the ALJ's decision still was not contrary to the weight of the substantive evidence in the record (Tr. at 2).

Dr. Jennings stated, in her letter dated April 29, 2011, that Plaintiff was under her care for herniated spinal discs with radiculopathy. She opined that Plaintiff "should not be lifting anything greater than five pounds, operate machinery requiring concentration or work that prohibits him from standing as needed." (Tr. at 272).

The letter report by Dr. Jennings did not contain new evidence concerning Plaintiff's limitations or disability. The record, even without this new material, makes clear that Plaintiff had neck and shoulder pains stemming from an extruded disc at C5-6 which he claimed limited him from working. The ALJ took note of these limitations and considered them as severe in determining Plaintiff's RFC. (Tr. at 74, 77, 79, 82-83,85-86).

Furthermore, the limitations espoused by Dr. Jennings directly comply with and are consistent with Plaintiff's residual functional capacity found by the ALJ. Specifically, there are no new limitations given by Dr. Jennings that are not already covered by Plaintiff's residual functional capacity. See,(Tr. at 77) ("The claimant would need a sit/stand option."); (Tr. at 77-78)(The claimant "is capable of sustaining attention and concentration **as necessary**.")(emphasis added); (Tr. at 86)("The claimant is not capable of returning to work that requires heavy lifting or carrying, the claimant is likely capable of performing other work

so long as his neck and left shoulder limitations are accommodated.").

Therefore, this Court finds that the Appeals Council did not err in finding that the new information provided no basis to change the Commissioner's decision.

## CONCLUSION

For the reasons set forth above, I find that the ALJ's decision denying Plaintiff's claim for disability benefits is supported by substantial evidence in the record. Accordingly, Defendant's motion is granted and Plaintiff's motion for judgment on the pleadings is denied. Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____
          MICHAEL A. TELESCA
     United States District Judge

DATED:    Rochester, New York
          November 6, 2012